# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| VANDANA JOSHI, as Personal Representative of the Estate OF TIRU CHABBA, deceased, for the benefit of the Decedent's survivors and Estate,<br><br>    Plaintiff,<br><br>  v.<br><br>OpenAI FOUNDATION (f/k/a OpenAI, INC.), et al.,<br><br>    Defendants. | Case No.:  4:26-cv-00222-MW-MJF |

## REPORT OF THE PARTIES' RULE 26 PLANNING MEETING

### 1. Rule 26(f) Conference Participants

The following persons participated in a Rule 26(f) conference on June 18, 2026 by videoconference:

| Counsel | Parties Represented[1] |
|---|---|
| Bakari Sellers | Plaintiff |

---

[1] This joint report is filed by OpenAI Foundation (f/k/a OpenAI, Inc.); OpenAI Group PBC, OpenAI GP, LLC; Aestas Management Company, LLC (f/k/a OpenAI Holdings, LP); Aestas, LLC; OpenAI Holdings, LLC; OAI Corporation (f/k/a OAI Corporation, LLC); OpenAI Global HoldCo, Inc., OpenAI Global, LLC, OpenAI OpCo, LLC (f/k/a OpenAI LP); and OpenAI, LLC, (collectively, "OpenAI") and Vandana Joshi ("Plaintiff"). The report refers to these entities collectively as the "parties." Defendant Phoenix Ikner has been served, but is currently incarcerated, has not appeared in this matter, and did not participate in the parties' Rule 26(f) conference.

| Robby Bell | Plaintiff |
| Amy Willbanks | Plaintiff |
| Brian Willen | OpenAI |
| Samantha Machock | OpenAI |
| Elizabeth Sharkey | OpenAI |

## 2. Prospect of Settlement and Alternative Dispute Resolution

The parties have agreed to early mediation, which is scheduled for August 19-20, 2026, with Michael Rhodes of Phillips ADR Enterprises. In light of that, the parties jointly request that the Court's initial scheduling order be modified as proposed below, with the understanding that discovery and motion practice will commence promptly if mediation does not resolve the case. The parties' proposed schedule seeks to accommodate this and other unique circumstances, including the parallel criminal proceedings and the prospect of related actions being filed before this Court, as discussed in more detail in Section 5 below.

## 3. Magistrate Judge Jurisdiction

The parties have conferred on this issue.

## 4. Nature and Basis of Claims and Defenses

**Plaintiff's Statement**

This case stems from the death of Tiru Chabba during a mass shooting which occurred at Florida State University at the hands of Phoenix Ikner, who extensively used OpenAI's product, ChatGPT, to discuss and obtain advice on mass shootings and the logistics of carrying out one on the FSU campus to: maximize media

-1-

attention, maximize human loss, choose firearms and ammunition to load, where to shoot humans for lethality, and how to disable the safety and operate the weapons.

## Count I — Negligence (OpenAI Defendants)

Plaintiff alleges the OpenAI Defendants owed a duty of reasonable care in designing, coding, training, testing, and distributing ChatGPT so that it would not encourage or assist users in harming third parties. The complaint alleges breach through inadequate safety guardrails, failure to flag/escalate dangerous conversations for human review, and failure to invest in safety commensurate with known risks — and that this breach was a substantial factor in Ikner's ability to plan and carry out the shooting.

## Count II — Gross Negligence (OpenAI Defendants)

Same underlying conduct as Count I, but Plaintiff alleges the Defendants had actual knowledge of specific defects, including: internal warnings and third-party warnings that models "felt off," compressed safety-testing timelines, and known sycophancy issues. Plaintiff alleges the OpenAI Defendants consciously disregarded them in favor of speed to market, supporting a punitive-damages claim. See, Fla. Stat. § 768.72 (pleading requirement for punitive damages) and § 768.73 (caps).

## Count III — Strict Products Liability: Defective Design (OpenAI Defendants)

Plaintiff alleges ChatGPT is a product and that the product, as designed, failed both the consumer-expectations test and the risk-utility test under Florida products

liability law. Namely, ChatGPT did not perform as safely as an ordinary user would expect and the foreseeable risks of the design (assisting a user in planning mass violence) outweighed its utility, given the existence of feasible alternative designs like filtering, sentiment analysis, escalation protocols, etc.

**Count IV — Strict Products Liability: Negligent Design (OpenAI Defendants)**

An alternative to standard strict liability claims regarding the product, under the facts alleged by Plaintiff, this is a negligence-based design-defect theory relying on the notion that OpenAI also breached its duty of reasonable care in the design/training process itself (as opposed to the product being defective in a strict-liability sense), and that this negligent design was a substantial factor in causing the FSU shooting.

**Count V — Strict Products Liability: Failure to Warn (OpenAI Defendants)**

Plaintiff alleges OpenAI knew of the risk that ChatGPT could validate delusional beliefs and assist a user planning violence, yet provided no warnings to the public of this risk. Plaintiff alleges that adequate warnings would have enabled earlier detection/intervention.

**Count VI — Negligent Entrustment (OpenAI Defendants)**

Stemming from Plaintiff's allegations that ChatGPT is a product, this is a chattel theory wherein Plaintiff alleges OpenAI had actual or constructive knowledge that Ikner was misusing its product in a dangerous manner and that

despite retaining the ability to suspend or restrict his access and to report his use to authorities, it continued to entrust him with continued use of the product, which was a substantial factor in the harm. Plaintiff relies on an analogous Florida case with the elements (knowledge of incompetence/dangerous propensity + continued entrustment). See, *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200 (Fla. 1997) (allowing Plaintiff to proceed on a claim of negligent sale/entrustment of a firearm to a visibly intoxicated purchaser),

### Count VII — Battery (Defendant Ikner)

This is a straightforward intentional-tort claim — Ikner intentionally shot Chabba with a firearm, causing unwanted harmful contact and death.

### Count VIII — Wrongful Death (Fla. Stat. §§ 768.16–768.26) (All Defendants)

A derivative statutory claim — because Plaintiff alleges the underlying wrongful acts alleged in Counts I–VII (negligence, gross negligence, products liability theories, negligent entrustment, and battery) proximately caused Chabba's death, the Estate and statutory survivors (spouse and two minor children) may recover the damages enumerated in Florida's Wrongful Death Act.

### OpenAI's Statement

Phoenix Ikner's attack at Florida State University was horrific. But while Ikner's victims deserve justice, this lawsuit against OpenAI is not an appropriate

means to provide it.  Established principles of law do not support holding Open AI liable for Ikner's premeditated mass murder.

OpenAI operates ChatGPT, a general-purpose artificial-intelligence ("AI") assistant that (as relevant here) provides text-based information in response to users' requests.  Like other AI tools based on large-language models, ChatGPT can answer factual questions, analyze information to communicate responses to queries, and help draft text and computer code.  Since it first launched publicly in 2022, ChatGPT has been used by hundreds of millions of people who generate billions of queries each day about every imaginable topic.  As of January 2026, over a quarter of U.S. workers report using ChatGPT.[2]

At bottom, Plaintiff's claims against OpenAI are predicated on this general-purpose informational tool's retrieval and communication of factual, publicly available information.  While Plaintiff asserts that OpenAI should have "connected the dots" that Ikner was planning a mass shooting based on the topics he discussed with ChatGPT—and either refused to provide further information in response to Ikner's questions and/or flagged his communications for human review—it is not readily apparent that any such measures could have prevented this tragedy. Further, Plaintiff's theory has serious First Amendment implications, including for the ability

---

[2] OpenAI, *ChatGPT Usage and Adoption Patterns at Work* (January 22, 2026), https://openai.com/business/guides-and-resources/chatgpt-usage-and-adoption-patterns-at-work/.

of millions of other ChatGPT users to seek and receive information.  Additionally, Plaintiff's effort to impose a legal duty on the providers of information-retrieval tools like ChatGPT to monitor users' communications and try to anticipate, flag, and report potential criminal intent is unprecedented and highly fraught.  Beyond the legal deficiencies with Plaintiff's claims, OpenAI anticipates that discovery will raise serious questions about foreseeability and alternative causes of Ikner's premeditated murder.  Discovery will also show that OpenAI takes seriously the safety of the technology it offers, and that it has worked to help ChatGPT's training better recognize and respond to signs of distress or threats of harm, de-escalate conversations in sensitive moments, and guide people toward real-world support, working closely with mental health experts and law enforcement.

### 5.  Proposed Case Timetables and Deadlines

The parties request an amended scheduling order to accommodate the impending mediation, the anticipated discovery needs in this matter, and various complexities arising from the existence of several parallel criminal proceedings, as discussed more below.  In general, the parties are aligned regarding the proposed modifications to the Court's case deadlines, with three exceptions: (1) OpenAI proposed a phased discovery schedule, in particular for deposition and expert discovery, whereas Plaintiff does not agree discovery should be formally phased; (2) OpenAI proposes that fact discovery close at the start of expert discovery, whereas

Plaintiff believes fact discovery should remain open until dispositive motions are filed; and (3) Plaintiff favors a trial schedule in the Fall of 2027 (ideally October), whereas OpenAI believes a trial in late 2027 or early 2028 is more realistic, given the need for time to resolve summary judgment motions, and file pre-trial motions and disclosures, and otherwise prepare for what will be a fairly complex trial.

*Mediation.* As noted, the parties have already engaged in discussions about mediation and believe that it would be most efficient and beneficial to defer other case deadlines until after the mediation.

*Phased Discovery*. If mediation does not resolve the case, OpenAI entities propose a phased discovery plan that accommodates the Court's interest in early, accelerated document discovery—to proceed in parallel with motion practice—while also phasing depositions and expert discovery to account for complexities arising from the parallel criminal and anticipated additional civil cases.  Plaintiff does not agree to this approach and instead suggests the deadlines as outlined below.

First, one of the defendants in this matter, Phoenix Ikner, is subject to parallel criminal proceedings.  Mr. Ikner is currently incarcerated pending his criminal trial, which is currently set for October 2026.  He has been served in this case, but has not yet responded to service or entered an appearance in this action.  Given Mr. Ikner's incarceration, uncertainty about whether or to what extent he will participate in the present proceedings, and his Fifth Amendment rights, it is unlikely that the parties

will be able to obtain highly relevant discovery from him until after his trial.  The Ikner trial is also likely to reveal sources of third-party discovery that is likely to be important to the claims and defenses in this case. The parties' proposed discovery schedule seeks to accommodate the additional complexities and time involved in obtaining third-party discovery, including from potentially uncooperative parties involved in a parallel criminal proceeding. *Cf. Young v. Miami-Dade County*, 217 F. Supp. 3d 1353, 1355 (S.D. Fla. 2016) (postponing discovery pending resolution of a related criminal prosecution where a party would "be forced to proceed without perhaps the most probative evidence at issue in the case" due to a key witness's possible invocation of Fifth Amendment immunity).

Second, OpenAI is currently subject to an open investigation by Florida's Office of Statewide Prosecution ("OSP"), which may create certain state-law immunities for employees while the investigation proceeds.  In order to avoid potential conflicts between the two proceedings, OpenAI entities propose that discovery be phased such that document discovery proceeds first followed by a subsequent phase of discovery for depositions.  Plaintiff does not agree to this approach and instead suggests the deadlines as outlined below.

Third, there are additional victims of Phoenix Ikner's shooting, some of whom have been in contact with the parties and expressed an intent to file suit against OpenAI.  To the extent those cases are filed, consolidation and/or coordination of

the various related proceedings would promote both efficiency and fairness.[3] Phased discovery, as proposed by the OpenAI entities herein, helps ensure both that OpenAI witnesses will not be asked to sit for multiple depositions on the same topics in related litigation and, conversely, that later plaintiffs have equal opportunity to participate in company depositions taken by the first-filed plaintiffs. Once again, Plaintiff does not agree to this proposed phased discovery.

Fourth, the parties anticipate significant expert work. This case raises difficult questions on which experts may be required to opine, including but not limited to questions about criminology, psychology, mental health, technology, and damages. In order to ensure the parties' experts are able to provide opinions informed by the full factual record, the parties' schedule proposes deadlines to phase expert discovery and to amend the expert disclosure deadlines to accommodate the volume of anticipated experts in this case.

***Fact Discovery Cut-Off Date.*** The OpenAI Defendants believe a fact discovery cut-off date of April 1, 2027—*i.e.*, more than seven months after the commencement of discovery if the case does not resolve through mediation—is sufficient time to complete the fact discovery needed in this case. To the extent

---

[3] Illustrating the likelihood that additional cases will require adjustments to the schedule in this matter, on June 25, 2026, a further lawsuit was filed. *Grant v. OpenAI, Inc.*, Case No. 2026 CA 001352 (Fla. 2d Cir. Ct.). While that case is currently in Florida state court, these same consolidation and efficiency considerations could become relevant if the case is removed.

discovery disputes arise, those can be addressed quickly and efficiently through motion practice and/or appointment of a discovery master, without the need to hold the fact discovery period open through expert discovery. A phased approach to fact and expert discovery will help facilitate the efficient development of this case, avoid delays, and allow the parties to focus during what is likely to be an intensive expert discovery period (given the anticipated volume of experts on both sides in this case).

The proposed schedule is based on the information available to the parties at this time. The parties reserve the right to seek further modification of this schedule—particularly if additional cases are filed—to allow briefing and discovery on overlapping issues to proceed in a coordinated fashion.

| Event | Proposed Plaintiff Deadlines | Proposed OpenAI Entities Deadlines |
|---|---|---|
| Mediation | August 19–20, 2026 | Same |
| Commencement of Discovery | August 21, 2026 | Same |
| Serve Initial Disclosures | 14 days after scheduled mediation (assuming case is not resolved through mediation)<br><br>[September 3, 2026] | Same |
| File Initial Disclosures | September 10, 2026 | Same |
| Deadline for Filing Answer or Rule 12 Motion | September 18, 2026 | Same |
| Deadline for Responses to Rule 12 Motion(s), if necessary | November 2, 2026 | Same |

| | | |
|---|---|---|
| Deadline to Serve Written Discovery | until Dispositive Motion deadline | March 1, 2027 |
| Discovery Phase 2 Opens:  Company Depositions May Commence | Plaintiff does not agree to this deadline | January 11, 2027 |
| Deadline to Amend Pleadings as a matter of right and Join Parties | March 11, 2027 | January 22, 2027 |
| Deadline for Motions to Compel Discovery | Plaintiff does not agree to this deadline. | Per the Court's Scheduling Order, 30 days prior to the close of fact discovery |
| Close of Fact Discovery | Until Dispositive Motion deadline | April 1, 2027 |
| Plaintiff Expert Disclosures and Reports and provide three potential dates for depositions | April 1, 2027 | Same |
| Defendant Expert Disclosures and Reports and provide three potential dates for depositions | May 14, 2027 | Same |
| Summary Judgment [and *Daubert*] Motions | August 2, 2027 | Same |
| Summary Judgment [and *Daubert*] Responses | September 1, 2027 | Same |
| Summary Judgment [and *Daubert*] Replies | September 24, 2027 | Same |
| Estimated Trial Date | Fall 2027 – preferably October | Late 2027 / Early 2028 |
| Est. Trial Length | 2-3 weeks | 3 weeks |

## 6. Discovery Requirements

**Plaintiff's Statement**

Plaintiff anticipates written discovery requests, document production, 30(b)(6) depositions, depositions of various witnesses from the OpenAI entities, eyewitnesses from the subject incident, multiple expert witnesses, and any other appropriate witnesses identified throughout the discovery process.

**OpenAI's Statement**

OpenAI anticipates requiring discovery in the following areas: (1) discovery from Phoenix Ikner; (2) various third-party discovery related to Ikner's mental health, alternative causes (including the source of the firearm used in the shooting), including, but not limited to, discovery from (a) Ikner's family members, (b) close friends or associates, (c) treating psychologists, psychiatrists, and school counselors, (d) Florida State University and other schools Ikner attended, (e) law enforcement bodies, emergency services, and the State Attorney's Office; and (3) discovery from Plaintiff and family members, including any sources of insurance and other benefits, including public or private, charitable or governmental, and discovery from the decedent's employer.

## 7. Limits on Discovery

The parties agree to adopt the Federal Rules of Civil Procedure defaults for limitations on discovery, including limits on and deadlines to respond to

interrogatories, the number of depositions per party, and the length of depositions. The parties also agree that, unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 requests for admission.

The OpenAI entities propose, for purposes of discovery requests, all of the OpenAI entities (to the extent they remain parties to this case) will be treated as a single party for purposes of applying the discovery limits set forth in the Federal Rules and governing case law.  Plaintiff at this stage cannot agree to the above and will meet and confer on this issue at a later date after responsive pleadings are filed. OpenAI proposes that—for any discovery request Plaintiff serves on OpenAI (as defined herein)—OpenAI shall respond on behalf of the entity or entities with information most relevant to Plaintiff's request.

## 8.  Electronically Stored Information Protocol and Protective Order

The parties anticipate that they will request and produce information from electronic or computer-based media.  The parties have agreed that early entry of a protective order will help facilitate the exchange of information, both for mediation and discovery.  To that end, the parties anticipate sharing a draft protective order early next week and are working cooperatively to negotiate a final proposed order prior to the mediation.

With respect to ESI:

(1) ***Whether disclosure or production will be limited to data reasonably available to the parties in the ordinary course of business.*** The OpenAI entities do not anticipate seeking discovery beyond what is reasonably available to the parties in the ordinary course of business; Plaintiff is unable to make this determination until document production and discovery is underway.

(2) ***The format and media agreed to by the parties for the production of any electronic or computer-based data, as well as agreed procedures for such production.*** The parties anticipate that ESI will be produced in the following forms:

   (a) **Imaging.** Except as otherwise provided, all documents existing in electronic format (e.g., Word, PDF, webpage files) shall be produced as 300 DPI TIFF black and white images with 1-bit depth and with a Bates number stamped on each page, document metadata (including extracted or OCR text), and a link to the associated extracted or OCR text file. The parties will consider re-producing select and specifically identified color documents as paginated color JPGs upon reasonable request by the receiving party.

   (b) **Native Format.** Spreadsheet-type files (e.g., Microsoft Excel or Google Sheets) and Multimedia files (video, audio, voicemail, etc.)

should be produced in native format unless they require redaction. Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Single-page Bates-stamped TIFF image slip sheets will be included for each document produced in native format. The slip sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating, "File Produced Natively."

(c) Plaintiff anticipates the potential for its experts to request data and/or ESI in certain formats not previously contemplated by the Court's standard ESI protocols. The Parties can work closely together to identify how to meet these needs.

(3) ***Whether reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.*** The parties represent that reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.

(4) ***Procedures to deal with inadvertent production of privileged information***. The parties agree that inadvertent productions of privileged or otherwise protected material shall generally be governed by the Federal Rules, provided,

for clarity, that the inadvertent disclosure of protected materials during discovery shall not constitute a waiver of any privilege or protection.

(5) ***Whether it appears that this case should be made subject to the Manual for Complex Litigation***.  The parties do not believe that the Manual for Complex Litigation should necessarily be binding on this case.  However, the parties agree that this case may present various complexities, and the Manual should guide the parties where relevant.

## 9.  Estimated Trial Date

Plaintiff anticipates this case being trial ready in the Fall 2027, preferably in October before the holiday season.  OpenAI entities anticipate, if additional cases are not filed, this case could be ready for trial at the end of 2027 or in early 2028.  For the reasons explained above, *supra* Section 5, a trial date within eight months of the filing of the instant action is not feasible, given the impending mediation, the significant fact and expert discovery needs in this case, and the complexities introduced by multiple parallel criminal and potentially other forthcoming civil proceedings.

## 10. Other Matters

In light of the parties' cooperation and to allow them to focus resources on advancing this case, the parties respectfully request that the Court waive its requirement that the parties file monthly joint discovery status reports.  The parties

reserve the right to request monthly discovery status reports in the future should discovery disputes arise that require judicial intervention to resolve. The parties reserve the right to supplement this Report should this case not resolve at mediation in August.

| | |
|---|---|
| Dated: July 2, 2026 | Respectfully submitted, |
| OSBORNE, FRANCIS & PETTIS | STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A. |
| /s/ *J. Robert Bell III* | |
| J. Robert Bell III, Esq. | *s/ Douglas L. Kilby* |
| Florida Bar No. 115918 | DOUGLAS L. KILBY, FL BN 73407 |
| Osborne, Francis & Pettis | dkilby@stearnsweaver.com |
| 925 S. Federal Hwy, Suite 175 | LIZ DESLOGE ELLIS, FL BN 97873 |
| Boca Raton, FL 33432 | lellis@stearnsweaver.com |
| (561) 485-4166 | HANNAH MURPHY, FL BN 1032759 |
| rbell@realtoughlawyers.com | hmurphy@stearnsweaver.com |
| | 106 E. College Avenue, Suite 700 |
| Gregorio A. Francis, Esq. | Tallahassee, FL 32301 |
| Florida Bar No. 8478 | Telephone: (850) 580-7200 |
| Osborne, Francis & Pettis | |
| 2707 E. Jefferson St. | |
| Orlando, FL 32803 | MATTHEW A. MACDONALD |
| (407) 655-3333 | (*pro hac vice* pending) |
| gfrancis@realtoughlawyers.com | matthew.macdonald@wsgr.com |
| | MELISSA MILLS |
| Bakari T. Sellers, Esq | (*pro hac vice* pending) |
| (*pro hac vice*) | mmills@wsgr.com |
| Strom Law Firm | TOMAS ARRIAGA |
| 6923 N. Trenholm Road, Suite 200 | (*pro hac vice* pending) |
| Columbia, South Carolina 29206 | tarriaga@wsgr.com |
| (803) 252-4800 | WILSON SONSINI GOODRICH & ROSATI |
| bsellers@stromlaw.com | PROFESSIONAL CORPORATION |
| | 953 East 3rd Street, Suite 100 |
| Amy E. Willbanks, Esq. | Los Angeles, CA 90013 |
| (*pro hac vice*) | |

Strom Law Firm
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
(803) 252-4800
awillbanks@stromlaw.com

James W. Bannister, Esq.
(*pro hac vice*)
Bannister, Wyatt & Stalvey
24 Cleveland Street, Suite 100
Greenville, South Carolina 29603
(864) 298-0084
jbannister@bannisterwyatt.com

*Attorneys for Plaintiff Vandana Joshi,
as the Personal Representative of the
Estate of Tiru Chabba*

Telephone: (323) 210-2900

W. BRADFORD BARBER
(*pro hac vice* pending)
bbarber@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
PROFESSIONAL CORPORATION
12235 El Camino Real #200
San Diego, CA 92130
Telephone: (858) 350-2300

ELIZABETH W. SHARKEY
(*pro hac vice* pending)
esharkey@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
PROFESSIONAL CORPORATION
95 S State Street, Suite 1000
Salt Lake City, UT 84111-1560
Telephone: (801) 401-8510

BRIAN M. WILLEN
(*pro hac vice* pending)
bwillen@wsgr.com
MICHELLE M. DANG
(*pro hac vice* pending)
mdang@wsgr.com
IVEY M. DYSON
(*pro hac vice* pending)
idyson@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
PROFESSIONAL CORPORATION
31 West 52nd Street, Fifth Floor

-18-

New York, NY 10019-6118
Telephone:  (212) 999-5800

*Attorneys for OpenAI*